J-S26017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.M.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 84 EDA 2018 |

Appeal from the Decree December 1, 2017
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2017-A0099

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                        **FILED JUNE 18, 2018**

J.J.H. ("Father") appeals from the December 1, 2017 decree that granted the petition filed by L.L. ("Mother") to involuntarily terminate his parental rights to their son, J.M.H.  We affirm.

During July 2009, J.M.H. was born of Mother and Father's relationship. The parties cohabitated until 2011, when Mother and her then-two-year-old son left the family home.  N.T., 11/29/17, at 7, 62.  Mother obtained a protection from abuse ("PFA") order with respect to Father during 2013.  *Id*. at 13.  Between March 2013 and October 2017, Father was incarcerated intermittently for a total of twenty-eight months.  *Id*. at 143-44.  During this period, Father failed to send letters, cards, or gifts to his son, although J.M.H.'s paternal grandmother, L.C., did contribute to his private school costs.  *Id*. at 14-15, 67, 75, 136.

_____
* Former Justice specially assigned to the Superior Court.

On June 15, 2017, Mother filed the instant petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b), in order to facilitate J.M.H.'s adoption by her husband, J.L. ("Stepfather"), whom she married in August 2016. The orphans' court appointed counsel for J.M.H. and Father, and it conducted an evidentiary hearing on November 29, 2017.[1] Mother and Stepfather testified in favor of terminating Father's parental rights. Father testified on his own behalf and presented his mother as a witness.

At the conclusion of the hearing, the orphans' court terminated Father's parental rights to J.M.H. pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). On

---

[1] The order appointing counsel for J.M.H. states that "Craig B. Bluestein, Esquire, is hereby appointed as counsel for [J.M.H.] in the above contested termination of parental rights proceeding, and any appeal that may be taken in this matter." Order of Court, 11/29/17. While Attorney Bluestein filed a "Brief of the Guardian Ad Litem for the Child" in this Court, both the order appointing Attorney Bluestein and the transcript from the hearing make it apparent that Attorney Bluestein acted as legal counsel for J.M.H. For example, during summations, Attorney Bluestein opined as follows:

> Mr. Bluestein: I am confident, **based on my discussions with my client**, that he's aware of the issues involved, just like these two gentlemen talked to their clients who are aware of the issues involved. And **based on my conversations with my client, as his counsel, legal counsel, I assert in favor of you finding that needs and welfare would be promoted by adoption**, if you decide grounds are established.

N.T., 11/29/17, at 177-78 (emphases added). Hence, notwithstanding the styling of his appellate brief, the certified record confirms that Attorney Bluestein represented J.M.H.'s legal interest pursuant to 23 Pa.C.S. § 2313(a).

December 27, 2017, Father filed a timely notice of appeal and a concise statement of errors complained of on appeal. Father raises the following issues for our review:

1. Did the honorable trial court commit error in terminating the parental rights of Father, pursuant to 23 Pa.C.S.A. § 2511(a)(1), when the testimony at trial demonstrated that Father had made significant efforts to comply with the terms of relevant court-ordered reunification efforts and had effectively been prevented by [Mother] from establishing a parental claim and performing parental duties[?]

2. Did the honorable trial court commit error in terminating the parental rights of Father, pursuant to 23 Pa.C.S.A. [§] 2511(a)(2), when [Mother] did not establish by clear and convincing evidence that Father's incapacity cannot or will not be remedied by father, particularly in light of the impressive strides made by father and the extent to which Father has endeavored to remain in contact with the child[?]

3. Did the honorable trial court commit error by involuntarily terminating Father's parental rights where the evidence confirmed that (i) a strong and loving bond had existed at relevant times between father and the child and (ii) [Mother] was unable to establish by clear and convincing evidence that termination was in the best interests of the child as contemplated by 23 Pa.C.S.A. [§] 2511(b)[?]

Father's brief at 2.[2]

_____

[2] The orphans' court decree referenced only the statutory grounds for terminating Father's parental rights outlined in § 2511(a)(1). However, the court's contemporaneous on-the-record statements and its subsequent opinion also included the grounds under § 2511(a)(2). Accordingly, Appellant challenged both grounds in this appeal. Nevertheless, as noted in the body of this memorandum, we sustain the termination of parental rights based on § 2511(a)(1), the grounds that the orphans' court specifically stated in its decree.

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to § 2511(a)(1), (2), and (b). We need only agree with the orphans' court as to any one subsection of § 2511(a), as well as § 2511(b), in order to

affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the orphans' court's decision to terminate pursuant to § 2511(a)(1) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

As it relates to § 2511(a)(1), the pertinent inquiry for our review is as follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure

> to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998)). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004). Additionally, as it relates to the orphans' court's decision to terminate parental rights pursuant to § 2511(a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). In *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003), we explained, "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship."

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the trial court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on

the child pursuant to Section 2511(b)." ***In re Z.S.W.***, 946 A.2d 726, 730

(Pa.Super. 2008) (quoting ***In re Adoption of Charles E.D.M.***, ***supra*** at 91).

With regard to a parent's incarceration, in ***In re Adoption of S.P.***, our

Supreme Court reiterated the standard of analysis pursuant to § 2511(a)(1)

for abandonment and added as follows:

> [a]pplying [***In re: Adoption of McCray***, 331 A.2d 652, 655 (Pa. 1975)] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." We observed that the father's incarceration made his performance of this duty "more difficult." ***Id.***
>
> . . . .
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012), (quoting ***In re:***

***Adoption of McCray***, ***supra*** at 655) (footnotes and internal quotation marks

omitted). Further, the Supreme Court stated, "incarceration neither compels

nor precludes termination of parental rights." ***In re Adoption of S.P.***, 47

A.3d at 828 (adopting this Court's statement in ***In re Z.P.***, 994 A.2d 1108,

1120 (Pa.Super. 2010)).

Father argues that he did not have a settled purpose of relinquishing his parental rights to J.M.H. and did not refuse or fail to perform parental duties. Father's brief at 17. He asserts that he demonstrated a settled purpose of maintaining his relationship and made repeated efforts to facilitate counseling and connect with his son that were not successful due to barriers Mother erected. *Id*. We disagree.

With regard to § 2511(a)(1), the orphans' court explained its decision to terminate Father's parental rights as follows:

> There is simply no question on this record, where birth father has had no contact with his son since June of 2014, that [Mother] has established that birth father has failed to perform parental duties for more than six months prior to the filing of the petition for termination of parental rights. This failure having been established, the court must now consider the parent's explanation for his conduct, and that quality of any post-abandonment contact between parent and child. *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa 1998)). This [c]ourt finds birth father's explanations for his conduct unpersuasive. His behavior in quibbling over the terms of proposed visits with his son was needlessly antagonistic and counterproductive. Birth father, even though granted opportunities by the family court, missed every opportunity to visit with his son and re-establish a relationship. There has been no contact between the parent and child for over three years before the filing of the petition; therefore there is no continuing relationship between the birth father and the child for the court to evaluate.
>
> . . . .
>
> In this case, the [c]ourt hereby determines that [Mother] has established by clear and convincing evidence that the parent has failed to perform any parental duties for a period of more than 6 months prior to the filing of the petition for termination of parental rights. Therefore, [Mother] has established by clear and

convincing evidence a basis for termination of birth father's parental rights under section 2511(a)(1).

Orphans' Court Opinion, 3/6/18, at 6-8.

Our review of the record supports the orphans' court's determination. The record reveals the following. Father has not seen his son since June 2014, at the latest. He failed to send letters, cards, or gifts, and he squandered his opportunities to perform his parental duties. During June 2016, a custody court awarded Father unsupervised partial physical custody of J.M.H. on alternating Saturdays. However, since he and Mother could not agree on how the exchanges would take place, Father failed to exercise his custodial rights. N.T., 11/29/17, at 16-19, 131-32. Four months later, the custody court issued an order requiring Father to begin reunification therapy with Jane Kessler, and upon starting therapy, Father could exercise partial physical custody of the child every other Saturday from noon until 6:00 p.m. *Id*. Again, Father failed to act. Rather than employing any reasonable effort to overcome the barriers to the performance of his parental duties, he did nothing. As Father did not participate in reunification therapy, he never regained any form of physical custody. N.T., 11/29/17, at 21, 133. Thus, the record supports the orphans' court's determination that Mother established clear and convincing evidence of abandonment under § 2511(a)(1).

With regard to Father's explanation for his inaction, Father testified that he did not attend any school events with his son because he believed that the 2013 PFA prevented it. *Id*. at 100-101. He also attempted to justify his

failure to avail himself of his custodial periods by referencing his disagreement with Mother regarding the logistics of the custody exchanges. *Id*. at 103-105. Furthermore, Father claimed that he did not attend reunification therapy because Dr. Kessler and Mother's lawyer are friends on Facebook and Father got "bad feelings" from Dr. Kessler. *Id*. at 106-107. As discussed *infra*, these excuses are unavailing.

In sum, the orphans court determined that Father failed to maintain contact with J.M.H. for more than three years before Mother filed her petition to terminate parental rights, and his explanations for his inaction were unpersuasive. In addition, the orphans' court concluded that "there is no continuing relationship between [Father] and [J.M.H.] for the court to evaluate." Orphans' Court Opinion, 3/6/18, at 7. As Father has not had any contact with his son since 2014, we find that the court's conclusions are amply supported by the record. Accordingly, we discern no abuse of discretion in its decision to terminate Father's parental rights to J.M.H. pursuant to § 2511(a)(1).

Next, we address Father's challenge to the orphans' court's § 2511(b) analysis. In reviewing the evidence in support of termination under § 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In**

- 10 -

re *K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, *supra* at 267.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, supra at 1121 (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa.Super. 2008).

With regard to § 2511(b), Father argues that "a bond truly exists between [him] and [J.M.H.]" and that "[i]t is impossible to conclude that terminating Father's parental rights 'will clearly promote the welfare of the child.'" Father's brief at 23. Further, Father argues that Mother "was not able to establish that severing the . . . parent-child bond, given Father's efforts to maintain contact with his son and stabilize his life, was in the best interest of the child." *Id*. Father asserts that the "only testimony critical of the bond between Father and his son came from Mother who, without any doubt

whatsoever, presented as an extremely biased source who at all relevant times has wanted Father permanently out of the lives of both herself and her son." ***Id***.

In rejecting Fathers assertions, the orphans' court explained:

> In this case, the testimony clearly established that, although birth father maintains that he loves his son, he has not taken steps necessary to maintain contact and to maintain a place of importance in his son's life. He has not seen his son since June of 2014, nor has he sent his son letters, presents or cards for birthdays or other occasions. Although he asserts that the PFA against him obtained by birth mother impeded his contact with his son, he did not take advantage of the opportunity to arrange visits pursuant to an order of the family court for every other Saturday.
>
> Based upon all of the testimony, I conclude that no evidence was presented to support birth father's contention that there is now any emotional attachment between birth father and son. I therefore conclude that the emotional needs and welfare of J.M.H. . . . can best be met by termination of the parental rights of the birth father and that J.M.H. . . . will not suffer a detriment as a result of termination of the parental rights of his birth father.
>
> The testimony also demonstrated that the parental bond between J.M.H. . . . and his step-father is strong and loving and that his step-father is involved with him on a daily basis, involved with his school and extracurricular activities, and supportive of his special needs.

Orphans' Court Supplemental Opinion, 3/6/18, at 10-11.

Again, our review of the certified record supports the orphans' court's determination. While Father testified regarding activities he and J.M.H. engaged in, such as swimming, watching movies, reading, and crabbing, those events occurred nearly three and one-half years ago when J.M.H. was no older than four. Father has not seen his son since at least June 2014. N.T.,

11/29/17, at 103, 111-13. In the interim, Father failed to send letters, cards, or gifts. *Id*. at 14-15, 67, 136. Indeed, Mother testified that J.M.H. does not remember Father and that he is excited to be adopted by Stepfather. *Id*. at 70, 71.

In contrast to J.M.H.'s non-existent relationship with Father, the child has a significant bond with Stepfather, whom he typically refers to as "dad." *Id*. at 70, 78-79. The certified record demonstrates that Stepfather and J.M.H. spend a substantial amount of time together playing, reading books, and doing homework. *Id.* at 80-83. Stepfather takes J.M.H. to school events and doctor's appointments, and he attends the child's Cub Scout meetings. *Id*. at 80-83.

In light of the foregoing evidence in the certified record, we sustain the orphans' court's conclusion that an emotional attachment does not exist between Father and J.M.H. and that J.M.H. will not suffer a detriment as a result of the termination of the parental rights of Father. As the orphans' court accurately determined, the parental bond between J.M.H. and Stepfather is strong and loving and J.M.H.'s needs and welfare can best be met by terminating the parental rights of Father. Hence, we do not disturb the orphans' court's decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/18